FILED
JOHN P. HEHMAN

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION, CINCINNATI

NOV 26 2013 PM 2:43

| | |
|---|---|
| **WANETTA TURNER**<br>1123 Burns Avenue<br>Cincinnati, Ohio 45215<br><br>—and—<br><br>**JOANNE JULES**<br>3585 Epley Lane<br>Cincinnati, Ohio 45247<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>**RITE OF PASSAGE, INC.**<br>246 Bonham Road<br>Cincinnati, Ohio 45215<br><br>　　　　Defendant. | Case No. **1:13CV871**<br><br>Judge **SPIEGEL, Jr.**<br><br><br>**COMPLAINT WITH JURY DEMAND** |

Plaintiffs, Wanetta Turner and Joanne Jules, for their Complaint against Defendant, Rite of Passage, Inc., asserting claims of invasion of privacy, fraud, and failure to pay overtime compensation, state as follows:

## PARTIES/JURISDICTION/VENUE

1. Plaintiff Wanetta Turner resides at the address listed in the caption.

2. Plaintiff Joanne Jules resides at the address listed in the caption.

3. Defendant, Rite of Passage, Inc. ("Defendant" or "ROP"), is, on information and belief, a Nevada corporation that owns and operates the Hillcrest Academy located at the address listed in the caption. The Hillcrest Academy is a residential facility for at-risk youth.

1

4. At all times relevant hereto, Defendant was the employer of both Plaintiffs.

5. Defendant is subject to the personal jurisdiction of this Court.

6. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this judicial district. *See* 29 U.S.C. § 1391(b).

7. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331, as Plaintiffs assert statutory claims under federal law in this action, and 28 U.S.C. § 1332, as Plaintiffs and Defendant are citizens of different States and the matter in controversy exceeds $75,000.00.

## FACTS

8. On or about May 1, 2012, Defendant assumed ownership of and began operating Hillcrest Academy ("Hillcrest"), which formerly had been owned and operated by Hamilton County, and Plaintiffs became employees of Defendant.

9. Plaintiff Wanetta Turner first began working at Hillcrest in 1999. She had served in the position of Residential Treatment Supervisor. Defendant hired her as a Group Leader, which was equivalent to the Residential Treatment Supervisor position.

10. Plaintiff Joanne Jules first began working at Hillcrest in 2004. She had served in the position of Residential Treatment Counselor. Defendant hired her as a Coach Counselor and later promoted her to Group Leader.

11. Both Plaintiffs were loyal and dedicated employees, and both were well-regarded by other staff and management. In December 2012, Ms. Turner was named "Employee of The Year" at Hillcrest.

12. In June 2012, not long after Defendant began operating Hillcrest, management advised Plaintiffs and other staff that they would be required on a regular

2

basis to work overnight at Hillcrest during their shifts. This was required for Coach Counselors twice a month and Group Leaders once a month. Management advised female staff that they would sleep in the Redwood dormitory on the Hillcrest campus.

13. ROP's official policy provides that "[t]he recording of any student, employee and/or visitor in shower rooms, restrooms, or sleeping quarters is strictly forbidden."

14. Given that female staff were being required to stay overnight in the "sleeping quarters" of the Redwood dormitory, there were concerns among staff whether cameras installed in the interior of the dormitory, which had been closed for years, were operational. At a group staff meeting, attended by Ms. Turner and Ms. Jules, Ms. Turner asked Nate Allen, the facility's Unit Manager, this very question. Allen unequivocally stated that these cameras at Redwood did "not work."

15. Also, Tim Gloston, the Director of Group Living at Hillcrest, separately told Ms. Turner that the Redwood cameras were not working.

16. In response to the resistance expressed by multiple staffpersons about the requirement to stay overnight at Redwood, Allen advised them to "make like it you're at home." This same comment was repeated by Ms. Jules's supervisor, Diedre Larkin.

17. In the subsequent months, Ms. Turner and Ms. Jules each had several overnight stays in the Redwood dormitory.

18. Based on the foregoing representations by management, Ms. Turner and Ms. Jules understood they were not being recorded. Accordingly, when they retired for the evening, they each donned bedtime attire as they would wear in their private homes.

19. In November 2012, to their shock and surprise, Plaintiffs discovered that the cameras at Redwood were operational. They personally observed a video monitor,

3

housed in the facility's security office, depicting an image of the interior of the Redwood dormitory, with the location (*i.e.*, "Redwood") identified via closed caption.

20. They also discovered that this video footage of them was being retained by ROP. Ms. Turner personally observed footage of herself at the Redwood dormitory during a previous overnight stay. The footage specifically depicted her walking into one of the dormitory's bedrooms.

21. Ms. Turner and Ms. Jules were dismayed that management had lied to them about the operational status of the cameras at Redwood and had so violated their privacy.

22. Disturbingly, one resident of the facility told Ms. Turner that he heard a male employee of ROP had seen a video of Ms. Jules during one of her overnight stays at Redwood. This was alarming to both Ms. Jules and Ms. Turner. They wondered whether the secretly recorded video footage of them might surface on the internet.

23. On or about February 19 and March 5, 2013, respectively, Ms. Turner and Ms. Jules resigned their employment with Defendant.

## COUNT ONE
### (Invasion of Privacy)

24. Plaintiffs incorporate the allegations set forth above as if fully restated herein.

25. Based on the representations by Defendant's management described herein, Plaintiffs believed that the interior of the Redwood dormitory at Hillcrest was a place of solitude and/or seclusion.

26. By secretly videotaping female staff during their overnight stay at the Redwood dormitory, Defendant intentionally intruded upon Plaintiffs' privacy.

27. Plaintiffs reasonably found this intrusion to be highly offensive.

28. Plaintiffs were outraged by Defendants' intrusion and it caused them significant emotional distress, including humiliation and embarrassment.

29. As a direct and proximate result of Defendant's intentional and malicious conduct, Plaintiffs have suffered damages to which they are entitled to recover against Defendant as set forth herein.

## COUNT TWO
### (Fraud)

30. Plaintiffs incorporate the allegations set forth above as if fully restated herein.

31. As described herein, Defendant knowingly made false representations, or made representations with utter disregard as to the falsity of same, to Plaintiffs and other staff about the operational status of the cameras in the Redwood dormitory.

32. Defendant made such false statements with the intent of misleading Plaintiffs and other staff into relying on these statements, and Plaintiffs did, in fact, justifiably rely on these statements, by staying overnight at the Redwood dormitory and dressing as if they were in their own homes and not being secretly videotaped.

33. Plaintiffs suffered injury proximately caused by their reliance in that they were embarrassed and humiliated by Defendants' secret recording of them in the Redwood dormitory.

34. As a direct and proximate result of Defendant's intentional and malicious conduct, Plaintiffs have suffered damages to which they are entitled to recover against Defendant as set forth herein.

## COUNT THREE
(Failure to Pay Overtime – FLSA and ORC Chapter 4111)

35. Plaintiffs incorporate the allegations set forth above as if fully restated herein.

36. Defendant misclassified the Group Leader position at Hillcrest as salaried exempt under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §216(b), and the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01, *et seq.*

37. When Hillcrest was run solely by Hamilton County, this equivalent position, Residential Treatment Supervisor, was classified as hourly, non-exempt.

38. During their respective tenures at Defendant, Plaintiffs never had the authority as Group Leader to hire or terminate employees. *See* 29 CFR § 541.100.

39. As Group Leaders, Plaintiffs regularly worked 96 hours every two weeks, which included sixteen hours of overtime for which they were not paid.

40. Also, Defendant failed to pay Plaintiffs overtime compensation for their overnight stays at the Redwood dormitory, which was considered working time under the FLSA and R.C. Chapter 4111.

41. Defendant acted will full knowledge of the provisions of the applicable law and acted willfully in failing to pay Plaintiffs the overtime compensation to which they were entitled.

42. As a direct and proximate result of this unlawful conduct, Plaintiffs have suffered damages to which they are entitled to recover against Defendant as set forth herein.

WHEREFORE, Plaintiff demands judgment against Defendant, in an amount to be determined at trial, as follows:

A. That Plaintiffs be awarded all lost pay;

B. That Plaintiffs be awarded liquidated damages under the FLSA;

C. That Plaintiffs be awarded compensatory damages;

D. That Plaintiffs be awarded punitive damages;

E. That Plaintiff be awarded pre- and post-judgment interest at the rate allowed by law;

F. That Plaintiffs be awarded attorney fees and such other and further relief which the Court deems just, proper and equitable under the circumstances.

Dated: November 26, 2013.

Respectfully submitted,

/s Stephen A. Simon

Stephen A. Simon (0068268)
Tobias, Torchia & Simon
911 Mercantile Library Bldg.
414 Walnut Street
Cincinnati, Ohio 45202
Tel: (513) 241-8137
Fax: (513) 241-7863
E-mail: steves@tktlaw.com
Trial Attorney for Plaintiffs

## JURY DEMAND

Plaintiff requests a trial by jury on all issues triable to a jury.

/s Stephen A. Simon

Stephen A. Simon (0068268)